IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALTON O. CARTER, | ) | CASE NO. 1:18-cv-1181 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE DAN AARON POLSTER |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| SHELBIE SMITH, Warden | ) | JONATHAN D. GREENBERG |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is

the Petition of Alton O. Carter ("Carter" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant

to 28 U.S.C. § 2254. Carter is in the custody of the Ohio Department of Rehabilitation and

Correction pursuant to journal entry of sentence in the case *State v. Carter*, Cuyahoga County Case

No. CR-15-598676-A.  For the following reasons, the undersigned recommends that the Petition be

DISMISSED IN PART and DENIED IN PART.

# I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying Carter's conviction as follows:

{¶ 4} On the evening in question, the victim, G.R., was at Tucker's Casino, a karaoke bar, celebrating her birthday; Carter was also at the bar, with two people, one of whom was a former high school classmate of G.R.'s. G.R. and Carter were acquainted with each other   they had previously met on a dating website and had had a brief, intimate relationship. At the time of the incident giving rise to this case, they were no longer dating, however, because the victim had ended the relationship. G.R. testified that when she saw Carter in the bar, she approached him to say hello to him and her former classmate and talked with them for a few minutes while she waited for a friend to arrive. After her friend arrived, G.R. hung out with her and mingled with other people she knew in the bar.

{¶ 5} The victim testified that she and her friend left the bar after closing time, around 2:30 a.m., and Carter was leaving at the same time. She invited Carter, along with some others, to do shots from a bottle of tequila she had in the trunk of her car; Carter accepted the invitation. During the course of the parking lot drinking, however, Carter appeared ready to leave   the friends he had been with had already left.

{¶ 6} While the group was in the parking lot, Carter closed G.R.'s trunk, not realizing that her car keys were in there. Carter helped her get the trunk open, then asked G.R. for a ride home and she told him no. She knew that he lived with his grandmother, whose house was just around the corner from the bar, and thought that Carter should walk home.

{¶ 7} Carter became angry, and an argument ensued, with some in the group blaming him for the trunk incident. Carter, irate and profane, then began arguing with the victim and her friend. Carter asked G.R. for a ride a second time, she told him no again, which further upset him. G.R. testified that, fearful of Carter, she maced him in the face. According to G.R., as she was in her car attempting to leave, Carter reached in and struck her in the face.

2

{¶ 8} G.R. drove to her apartment building in Cleveland Heights; her friend followed in her car to make sure G.R. made it home safely. When G.R. arrived in front of her apartment building, she and her friend stopped to talk about what had transpired. After their conversation, when G.R. attempted to restart her car, the car would not start. Her friend called her father, who arrived and "jumped" G.R.'s car. Once the car was running, the friend and her father left, and G.R. drove her car into the garage of her apartment building.

{¶ 9} The victim testified that after she parked her car, and as she was approaching her apartment building, Carter appeared "out of nowhere" and approached her, angry about what had occurred earlier at Tucker's Casino. She told him to leave and that they would talk about it later when he was sober, but he continued to argue with her. G.R. testified that she was right by a neighbor's window, and she knew that neighbor tended to be up late, so she screamed for him to call 911, and attempted to run back into the parking garage, thinking she could escape in her car. G.R. testified that Carter grabbed her wrist, but she was able to free herself from him and continue to the garage. The victim testified that Carter followed her into the garage, where he choked her, digitally penetrated her vagina, and attempted to anally rape her. She maced him again, and he ran out of the garage, where he encountered the police who had arrived on the scene by that time.

{¶ 10} The neighbor testified that he saw G.R. and an unknown man at the back door of the apartment building and thought he saw a struggle. He then observed both of them walking towards the garage and thereafter lost sight of them. He testified that it did not appear that the man was pulling the victim into the garage.

{¶ 11} One of the responding officers, Jason Moze ("Officer Moze"), testified that he encountered Carter, who was "calm," but "disheveled," with mace on his face and dirt and cobwebs on his clothing and shoes. The officer testified that he found similar cobwebs in the parking garage. The victim had her pants and underpants pulled down to her ankles, and was "irate" and "screaming" that she had been raped; Carter denied raping her, however.

{¶ 12} Officer Moze placed Carter in the back of his patrol car. The officer testified that Carter was not under arrest at that time because he still needed to determine the "full story," and the scene was chaotic because of the apparent animosity between G.R. and Carter. Initially, G.R. told the officer that she and Carter did not know each other; later, however, she admitted that they did.

{¶ 13} G.R. went to the hospital, where a sexual assault examination was performed on her. The sexual assault nurse examiner ("SANE") who conducted

3

the examination testified at trial. The SANE testified that the victim told her that Carter grabbed her and dragged her by her arms, while choking, and shaking her, and hitting her head against a wall. She also told the nurse that Carter had attempted to digitally penetrate her vagina, but she was not sure if he had been successful. The SANE testified that she did not find any evidence of injury to G.R.'s neck or vagina. She did observe "minor" injuries, that could have been caused by G.R.'s account of the events, but for which the nurse was unable to render an opinion as to their cause.

{¶ 14} The state also presented the testimony of two forensic scientists from the Ohio Bureau of Criminal Investigation ("BCI"). One of the scientists examined a specimen collected by the nurse as part of the rape kit. The scientist tested the victim's underwear and determined that it was positive for semen. The other scientist conducted two tests on the swabs from the victim's underwear, and concluded, based on the results of one of the tests, that Carter was excluded as the source of the DNA, and was unable to reach a conclusion based on the results of the other test. Further, testing of vaginal and bi-lateral buttock samples taken from the victim did not reveal the presence of any male DNA.

{¶ 15} The other scientist testified about her conclusions regarding Carter's "touch DNA" on the victim. Specifically, she tested neck swabs taken from G.R. and found that Carter's touch DNA was present. She testified that the amount of Carter's DNA found on G.R.'s neck seemed a "little unlikely that it would just be from casual rubbing up against, but, again, I can't say for certain one way or the other."

{¶ 16} Detective Thomas DeCaro from the Cleveland Heights Police Department was assigned to investigate the case. The detective interviewed Carter, who at the time was under arrest and in police custody at the police station. The interview video was played for the jury at trial.

{¶ 17} During the interview, Carter told the detective that the victim had maced him while they were at Tucker's Casino, so he walked to her apartment to talk to her about why she had done that. Carter told the detective that he arrived at her building as she was at the door to the building; he denied waiting there for her to arrive. Carter said that the victim mentioned wanting to get something to eat and headed back towards her car. Carter said, "okay, then you can take me home."

{¶ 18} According to Carter, he was walking around to the passenger side of the victim's car when the police approached and yelled "stop." The victim then shouted "he tried to rape me." Carter stated that when he turned around to look

at the victim, she had her pants down. He stated that he had no idea how her pants got down. Carter told the detective that his clothing was dirty because he had fallen at Tucker's Casino after G.R. had maced him.

*State v. Carter*, 2017-Ohio-5573, ¶¶ 4-18 (Ohio App. 8th Dist. June 29, 2017) (Doc. No. 8-1, Ex. 12).

## II. Procedural History

### A.    Trial Court Proceedings

On August 28, 2015, the Cuyahoga County Grand Jury indicted Carter on the following charges:

> Count 1, rape; Count 2, attempted rape; Count 3, felonious assault; Count 4, kidnapping; and Count 5, misdemeanor assault. With the exception of Count 5, misdemeanor assault, the counts contained notices of prior conviction (Counts 1, 2, and 4); repeat violent offender specifications ("RVO," Counts 1, 2, and 4); sexually violent predator specifications (Counts 1, 2, 3, and 4); and sexual motivation specifications (Counts 3 and 4).

(Doc. No. 8-1, Ex. 1.)

At his arraignment, Carter was declared indigent and a court-appointed attorney was assigned to his case.  (Doc. No. 8-1, Ex. 2.)  Carter entered pleas of not guilty to all charges.  (*Id.*)

The case proceeded to a jury trial in May 2016, although the sexually violent predator specifications were tried to the bench.  (Doc. No. 8-1, Ex. 3.)  After the State rested it's case, Carter made a Rule 29 motion for judgment of acquittal on the charges of attempted rape (Count 2) and assault (Count 3).  The trial court denied the motion in part and granted it in part, by making Count 3 a lesser offense of misdemeanor assault, and removing the sexual motivation and sexually violent predator specifications from Count 3.  (Doc. No. 8-1, Ex. 4.)

On May 11, 2016, the jury returned its verdict, finding Carter guilty of misdemeanor assault

(Count 3) and kidnapping (Count 4). (Doc. No. 8-1, Ex. 5.)  By inadvertance, the Court had neglected to charge the jury on the sexual motivation specification on Count 4, and therefore Carter was found not guilty on that specification.  (*Id*.)

The matter was referred to the adult probation department for a presentence investigation. Prior to sentencing, Carter filed a motion to set aside the verdict and for a Crim. R. 29 judgment of acquittal. (Doc. No. 8-1, Ex. 6.)  The trial court denied the motion. ( Doc. No. 8-1, Ex. 7.)  On June 1, 2016, the state trial court held a sentencing hearing.  (Doc. No. 8-1, Ex. 8.)  The trial court sentenced Carter to six years on the kidnapping conviction, to be served concurrently to a six-month sentence on the assault conviction. (Doc. No. 8-1, Ex. 8.)  He was labeled a Tier II sex offender and advised of post-release control.  (*Id.*)

## B.    Direct Appeal

Carter, through counsel, filed a timely notice of appeal to Ohio Eighth District Court of Appeals ("state appellate court").  (Doc. No. 8-1, Ex. 9.) In his appellate brief, he raised the following assignments of error:

I.    The trial court violated appellant's rights under the Fifth, Sixth, and Fourteenth Amendments of the Constitution of the United States by allowing the state to present evidence of statements elicited from appellant by police officers after he was accused of rape and while he was being detained by police officers without first advising him of his constitutional rights and obtaining a valid waiver from him.

II.    The trial court committed plain error by failing to give a jury instruction on the lesser included offense of kidnapping.

III.    The trial court committed plain error by permitting the state's forensic scientist to speculate on whether touch DNA found on the alleged victim's neck supported the allegation of assault (choking/strangulation).

IV.    The trial court committed prejudicial error and interfered with

6

appellant's right to confront his accusers by prohibiting defense counsel from questioning the SANE nurse about matters set forth in the victim's medical records.

V.    The trial court committed plain error by allowing the investigating officer to editorialize and express personal opinions while testifying about statements made by appellant.

VI.   The trial court committed prejudicial error by allowing the investigating officer to provide hearsay testimony concerning statements allegedly made by a barmaid at Tucker's Casino.

VII.  Appellant was denied his right to effective assistance of counsel.

VIII. The evidence was insufficient to support appellant's conviction for kidnapping.

IX.   Appellant's conviction for kidnapping is against the manifest weight of the evidence.

(Doc. No. 8-1, Ex. 10.)  The State filed a brief in response.  (Doc. No. 8-1, Ex.11.)

On June 29, 2017, the state appellate court affirmed Carter's convictions.  *State v. Carter*, 2017-Ohio-5573 (Ohio App. 8th Dist. June 29, 2017) (Doc. No. 8-1, Ex. 12).

On August 23, 2017, Carter, proceeding *pro se*, filed an untimely Notice of Appeal with the Supreme Court of Ohio. (Doc. No. 8-1, Ex. 13.) In his Motion for Leave to File a Delayed Appeal, he asserted that his appeal was filed late because his appellate counsel was late in sending him a copy of the decision.  (Doc. No. 8-1, Ex. 14.)  The Supreme Court of Ohio granted Carter's Motion for Leave to File a Delayed Appeal.  (Doc. No. 8-1, Ex. 15.)  In his Memorandum in Support of Jurisdiction, Carter raised the following Propositions of Law:

I.    The trial court violated Appellant's rights under the Fifth, Sixth, and Fourteenth Amendments of the Constitution of the United States by allowing the State to present evidence of statements elicited from Appellant by police officers after he was accused of rape and while he was being detained by police officers without first advising him of his

constitutional rights and obtaining a valid waiver from him.

II.    The trial court committed plain error by failing to give jury instructions on the lesser included offense of kidnapping.

III.    The trial court committed plain error by permitting the State's forensic scientist to speculate on whether DNA found on the alleged victim's neck supported the allegation of assault (choking/strangulations).

IV.    The trial court committed plain error and interfered with Appellant's right to confront his accusers by prohibiting defense counsel from questioning the SANE nurse about matters set forth in the victim's medical records.  Sixth and Fourteenth Amendments to the Constitution of the United States; Article I, Sections 10 and 16 of the Constitution of the State of Ohio.

V.    The trial court committed prejudicial error by allowing the investigating officer to editorialize and express personal opinions while testifying about statements made by appellant.

VI.    The trial court committed prejudicial error and violated by allowing [sic] Appellant's right to confront his accusers by allowing the investigating officer to provide hearsay testimony concerning statements allegedly made by a bar maid at Tucker's Casino.  Evid. R. 802; Sixth and Fourteenth Amendments to the Constitution of the United States; Article I, Sections 10 and 16 of the Constitution of the State of Ohio.

VII.    Appellant was denied his right to effective assistance of counsel.  Sixth and Fourteenth Amendments to the Constitution of the United States; Article I, Sections 10 and 16 of the Constitution of the State of Ohio.

VIII.    Appellant was convicted of kidnapping under R.C. 2905.01(a)(4) the evidence was Insufficient as a matter of Law to sustain the conviction.

(Doc. No. 8-1, Ex. 16.)  The State did not file a response.

On March 14, 2018, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct. Prac.R. 7.08(B)(4).  (Doc. No. 8-1, Ex. 17.)

**C.**    **Application to Reopen Appeal under Ohio App. R. 26(B)**

On September 17, 2017, Carter filed a *pro se* Application to Reopen Appeal Pursuant to Ohio

8

App. R. 26(B).  (Doc. No. 8-1, Ex. 18.) Carter's Application raised the following arguments:

> Appellant was convicted of kidnapping under R.C. 2905.01(A)(4) when evidence was insufficient as a matter of law to sustain the conviction.

(*Id.*)  The State filed a brief in opposition.  (Doc. No. 8-1, Ex. 19.)

On January 2, 2018, the state appellate court applied the doctrine of *res judicata* and denied Carter's application.  *State v. Carter*, 2018-Ohio-29, *appeal not allowed*, 2018-Ohio-923, 152 Ohio St. 3d 1420, 93 N.E.3d 1003 (Ohio App. 8th Dist. 2018).

**D.      Post-Conviction Filings**

On March 13, 2018, Carter filed a *pro se* Petition to Vacate or Set Aside Judgment of Conviction or Sentence.  (Doc. No. 8-1, Ex. 21.)  Carter's Petition raised the following claim:

> Andy Petropouleas, trial counsel for petitioner, was deficient in that he did not challenge the indictment for being unconstitutionally vague for failing to alleged [sic] facts with particularity thus failing to charge an offense, this Violates Petitioner's 6th Amendment right "to be informed of the nature and cause of action" and the 6th Amendment right to effective assistance of counsel.

(*Id.*)  Carter filed a Motion for Summary Judgment on this claim.  (Doc. No. 8-1, Ex. 22.)

On April 11, 2018, the trial court denied Carter's Motion for Summary Judgment.  (Doc. No. 8-1, Ex. 23.)  On the same day, the trial court also denied Carter's Petition to Vacate or Set Aside Judgment of Conviction on the basis that it was untimely filed under the Post Conviction Relief Statute, R.C. 2953.21, and that the assertion of ineffective assistance of counsel was barred by the doctrine of *res judicata*.   (Doc. No. 8-1, Ex. 24.)

On April 18, 2018, Carter filed a *pro se* motion to Amend/Supplement to Post-Conviction to Vacate.  (Doc. No. 8-1, Ex. 25.)  On April 26, 2018, the trial court denied this motion.  (Doc. No. 8-1, Ex. 26.)

9

E.      **Federal Habeas Petition**

On May 9, 2018,[1] Carter filed a *pro se* Petition for Writ of Habeas Corpus in this Court and

asserted the following grounds for relief:

> **GROUND ONE**: Insufficient Evidence to Sustain Conviction.
>
>> **Supporting Facts**: The evidence does not support a conviction for kidnapping 2905.01(A)(4).  The record does not reflect that I acted or had the purpose to engage in sexual activity. The appellate Judges made an erroneous judgment stating "Appellate [sic] presented unwanted sexual advances towards the victim." Unwelcome sexual advances does not constitute "sexual activity." Then the appellate judge made extra judicial Judgment saying "the jury found some type of sexual motivation" which appellate [sic] was not found guilty of.  Sexual motivation
>
> **GROUND TWO**: Ineffective Assistance of Trial Counsel
>
>> **Supporting Facts**: Trial counsel failed to raise the issue of Miranda warning before trial court.  Trial counselor failed to seek instruction at the trial level which caused a waiver of all errors except plain errors.  Trial counsel prejudice me by not objecting to speculation made by forensic scientist which was viewed by appellate court as plain error.
>> Trial counselor failed to make known the excluded evidence to the court after a side bar was had.
>> Trial counsel failed to use impeachment evidence namely Officer Moze body cam the jury did not see the video if so it would have found petitioner not guilty.

(Doc. 1 at 5,7.)

On August 24, 2018, Warden Shelbie Smith ("Respondent") filed her Return of Writ. (Doc.

No. 8.) Carter filed a Traverse on September 21, 2018.  (Doc. No. 12.)

---

[1]  Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities. *See Houston v. Lack*, 487 U.S. 266 (1988).  While the Petition herein did not arrive at the Court for filing until May 22, 2018, Carter states that he placed it in the prison mailing system on May 9, 2018.  (Doc. No. 1 at 15.)  Thus, the Court will consider the Petition as filed on May 9, 2018.

### III.  Exhaustion and Procedural Default

Respondent argues the first, second, or fourth issues in Carter's ineffective assistance of counsel claim are procedurally defaulted because the fourth issue was not brought in Carter's appeal to the state appellate court, and the first, second, or fourth issues were not brought in the Supreme Court of Ohio on direct review.  (Doc. No. 8 at 16-18.)  Carter does not address his failure to raise these claims before state appellate courts in either his Memorandum in Support of his Petition or his Reply to Respondent's Answer.  (Doc. Nos. 5, 12.)

### A.     Legal Standard

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b), (c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)).  A claim may become procedurally defaulted in two ways.  *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate

11

grounds for precluding relief, the claim is procedurally defaulted.[2]  *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted.  *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731  32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts.  The exhaustion requirement if the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") only "refers to remedies still available at the time of the federal petition."  *Engle*, 456 U.S. at 125 n.28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id*.  In Ohio, a

---

[2] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Id.* at 138  39; *Barkley v. Konteh*, 240 F. Supp. 2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

12

petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.*  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law."  *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138 39.  "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error."  *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S.

13

152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219  20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S. 722, 749  50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  Conclusory statements are not enough  a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). *See also Jones v. Bradshaw*, 489 F. Supp. 2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 497 F. App'x 473, 480 (6th Cir. 2012).

**B.    Application to Petitioner**

The second ground for relief in Carter's Petition, which alleges ineffective assistance of counsel, is based on what he perceives as errors and omissions by his trial counsel, including that trial counsel:

1.    "failed to raise the issue of Miranda warning before trial court;"

2.    "failed to seek instruction at the trial level which caused a waiver of all errors except plain errors;"

3.    failed to object to a "speculation made by [a] forensic scientist;"

4.    "failed to make known the excluded evidence to the court after a side bar was had;" and

14

5.      "failed to use impeachment evidence namely Officer Moze body cam."

(Doc. No. 1 at 7.)  Respondent alleges that the first, second, and fourth issues raised in this second

ground for relief are procedurally barred because they were not raised in Carter's direct appeals.

(Doc. No. 8 at 16-18.)  The record shows that Carter did not raise the fourth issue in the ineffective

assistance claim he brought in state appellate court for direct review.  (Doc. No. 8-1, Ex. 10.)  Nor

did Carter raise the first, second, or fourth issues in the ineffective assistance claim he brought in the

Supreme Court of Ohio on direct review.  (Doc. No. 8-1, Ex. 16.)

Carter does not address the failure to raise these claims before state appellate courts in either

the Memorandum in Support of his Petition or the Reply to Respondent's Answer.  (Doc. Nos. 5,

12.)  In his Petition, however, Carter asserted that he had raised the issue of ineffective assistance

of trial counsel in his direct appeal.  (Petition, Doc. No. 1 at 7.)  While this is true, he has not

consistently asserted the same factual basis for this claim in his various appeals.  In his direct appeal,

Carter raised the following issues as grounds for his ineffective assistance of counsel claim:

1.      Failure to request jury instruction on the lesser included offense of abduction;

2.      Failure to file a motion to suppress statements made by Appellant;[3]

3.      Failure to object to inadmissable and improper evidence;[4]

4.      Failure to use body cam to impeach prosecution witness; and

5.      Cumulative effect.

---

[3]  This included statements made by Carter prior to receiving a *Miranda* warning.  (Doc. No. 8-1, Ex. 10.)

[4]  This included the forensic scientist's "speculation" regarding DNA evidence.  (Doc. No. 8-1, Ex. 10.)

15

(Doc. No. 8-1, Ex. 10.)

In his appeal to the Supreme Court of Ohio, Carter raised only three issues as grounds for his ineffective assistance of counsel claim:

1.  Failure to object to improper and inadmissable evidence;[5]

2.  Failure to use body cam to impeach prosecution witness; and

3.  Cumulative effect.

(Doc. No. 8-1, Ex. 16.)

The record reflects that, while Carter raised an ineffective assistance of trial counsel claim on direct appeal, that claim made no mention of the failure to make known excluded evidence raised as the fourth issue in the instant habeas complaint. Further, the record reflects that Carter made no mention of his arguments regarding the failure to exclude statements given prior to receiving a *Miranda* warning, to seek instruction at the trial level which caused a waiver of all errors except plain errors, or to make known excluded evidence as asserted in the instant habeas petition. Thus, Carter did not raise the first, second, or fourth issues in the ineffective assistance of trial counsel claim presented in Ground Two of his Petition on direct appeal.

Because Carter failed to fairly present his claims to both the state appellate court and the Supreme Court of Ohio, the first and second factors in the *Maupin* test have been satisfied: Carter failed to comply with a state procedural rule, and the state court actually enforced its procedural sanction. *Leroy v. Marshall*, 757 F.2d 94, 97 (6th Cir. 1985); *Lordi v. Ishee*, 384 F.3d 189, 194 (6th Cir. 2004). The third factor in the *Maupin* test is also satisfied because the state procedural rule of

---

[5]  This included the forensic scientist's "speculation" regarding DNA evidence. (Doc. No. 8-1, Ex. 16.)

waiver is an "independent and adequate" state ground to forclose federal review. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994) ("Because [Petitioner] failed to raise his constitutional issues in his direct appeal, and because [Petitioner's] procedural default constituted an "adequate and independent" state ground on which the state relied to foreclose judicial review of his constitutional claims, we may not consider [Petitioner's constitutional claims unless he can show cause to excuse his failure to present the claims in state court and actual prejudice to his defense at trial or on appeal.")

In light of the above, the Court finds issues one, two, and four of Carter's ineffective assistance of trial counsel claim as raised in the first, second, and fourth issues of Ground Two of his Petition are procedurally defaulted. Therefore, absent a showing of cause and prejudice, the first, second, and fourth issues of Ground Two of his Petition should be dismissed.

### 1. Cause and Prejudice

Carter may nevertheless obtain a merits review of this claim if he can demonstrate cause for the default and prejudice resulting therefrom, or that failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren,* 440 F.3d at 763. A habeas petitioner must "show that some objective factor external to the defense" caused his failure to comply with the state's procedural rule, *Murray*, 477 U.S. at 488, and if the petitioner fails to do so, the Court need not consider the prejudice prong. *Smith v. Murray*, 477 U.S. 527, 533  34, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

Carter makes no argument, either in his Petition or Traverse, regarding these issues. He did not address the issue of procedural default in his habeas filings. He made no argument that either cause or prejudice excuse the default, nor does he argue that he is actually innocent.

In order to show "cause," Carter must demonstrate 'that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. at 488. Here, neither Carter's Petition nor either of his briefs make any allegations of cause or offer any explanation for his procedural default.  Accordingly, and for all the reasons set forth above, the Court finds Carter has failed to establish cause and prejudice to excuse the procedural default of , the first, second, and fourth issues of Ground Two of his Petition.

### 2.       Actual Innocence

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the United States Supreme Court has recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense.  *Dretke v. Haley*, 541 U.S. 386, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004) (citing *Carrier*, 477 U.S. at 495  96); *see also Schlup*, 513 U.S. at 327 (1995).  Actual innocence means "factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623  24, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).  To be credible, such a claim requires the petitioner to support his allegations of constitutional error with new and reliable evidence that was not presented at trial.  *Schlup*, 513 U.S. at 324; *see also Gulertekin v. Tinnelman  Cooper*, 340 F.3d 415, 427 (6th Cir. 2003).

Here, Carter neither asserts that he is actually innocent, nor does he point to any new, reliable evidence of his innocence.  Absent new evidence of innocence, "even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup*, 513 U.S. at 316.

18

Accordingly, and in light of the above, it is recommended that sub-issues one, two, and four of Ground Two be DISMISSED as procedurally defaulted.

## IV.  Review on the Merits

### A.     Legal Standard

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court.  *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v. Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012).  *See also Lopez v. Smith*, 574 U.S. 1, 7, 135 S.Ct. 1,

4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.' " (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013))).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.  *See also Shimel*, 838 F.3d at 695.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 F. App'x 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of

its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id.* (internal quotation marks omitted). Therefore, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786 87. This is a very high standard, which the Supreme Court readily acknowledged. *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.").

### 1.    Ground One - Sufficiency of the Evidence

Carter argues his conviction for kidnapping is not supported by the sufficieny of the evidence because, at trial, the jury acquitted him of both rape and attempted rape, demonstrating there was insufficient evidence to sustain the essential element of "sexual purpose" in his kidnapping conviction. (Doc. No. 5 at 7-9.) He asserts that "the state relied upon the identical conduct on the rape and attempted rape charges for which the jurors acquitted Carter to prove a 'purpose to engage in sexual activity,'" and it is therefore "obvious from the acquittal on the rape and attempted rape charges that the jurors did not believe that there was any purpose on Carter's part to 'engage in sexual activity.'" (Doc. No. 12 at 3.) This claim was raised on direct review in both the appellate court and the Supreme Court of Ohio, and is therefore preserved for review in the instant habeas petition. (Doc. No. 8-1, Ex. 10 at 31, Ex. 16 at 12.)

The state appellate court reviewed Carter's insufficient evidence claim, and found that:

{¶ 69} In his eighth assignment of error, Carter contends that the evidence was insufficient to support the kidnapping conviction and, thus, by extension, the Tier II sex offender label. We disagree.

{¶ 70} Sufficiency of the evidence is a legal standard that tests whether the evidence is legally adequate to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In determining whether the evidence is legally sufficient to support a conviction, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Robinson*, 124 Ohio St.3d 76, 2009  Ohio  5937, 919 N.E.2d 190, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. A verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

{¶ 71} In a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed but whether, if believed, the evidence supports the conviction. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002  Ohio  2126, 767 N.E.2d 216, ¶ 79  80 (evaluation of witness credibility not proper on review for sufficiency of evidence). Further, the testimony of "one witness, if believed by the jury, is enough to support a conviction." *State v. Strong*, 10th Dist. Franklin No. 09AP  874, 2011  Ohio  1024, ¶ 42.

{¶ 72} Carter contends that the evidence was insufficient to support the kidnapping conviction because the "essential element of purpose to engage in sexual activity was insufficient as a matter of law." Carter cites that he was acquitted of the rape and attempted rape in support of his claim. But as mentioned, the kidnapping statute "punishes certain removal or restraint done with a certain purpose and the eventual success or failure of the goal is irrelevant." *Taylor*, 8th Dist. Cuyahoga No. 100315, 2014  Ohio  3134, ¶ 30. Here, the state presented evidence, namely the victim's testimony, that Carter held her against her will in the garage and made unwelcomed sexual advances toward her. That testimony was sufficient to support the kidnapping charge and, therefore also the Tier II sexual offender label.

{¶ 73} The eighth assignment of error is overruled.

(Doc. 8-1, Ex. 12.)

A habeas petitioner who claims that the evidence at trial was insufficient for a conviction must demonstrate that, "after viewing the evidence in the light most favorable to the prosecution,

[no] rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt." *Jackson*, 443 U.S. at 319.  *See also Scott v. Mitchell*, 209 F.3d 854, 885 (6th Cir. 2000).  The

role of the reviewing court in considering such a claim is limited:

> A reviewing court does not reweigh the evidence or redetermine the credibility of the
> witnesses whose demeanor has been observed by the trial court.  It is the province of
> the factfinder to weigh the probative value of the evidence and resolve any conflicts
> in testimony.  An assessment of the credibility of witnesses is generally beyond the
> scope of federal habeas review of sufficiency of evidence claims.  The mere existence
> of sufficient evidence to convict therefore defeats a petitioner's claim.

*Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (internal citations omitted).

Moreover, it is well established that '"attacks on witness credibility are simply challenges to the

quality of the government's evidence and not to the sufficiency of the evidence.'" *Martin v. Mitchell*,

280 F.3d 594, 618 (6th Cir. 2002) (quoting *United States v. Adamo*, 742 F.2d 927, 935 (6th Cir.

1984)).

Consistent with these principles, the Supreme Court has emphasized that habeas courts must

review sufficiency of the evidence claims with "double deference":

> We have made clear that *Jackson* claims face a high bar in federal habeas
> proceedings because they are subject to two layers of judicial deference.  First, on
> direct appeal, 'it is the responsibility of the jury    not the court    to decide what
> conclusions should be drawn from evidence admitted at trial.  A reviewing court may
> set aside the jury's verdict on the ground of insufficient evidence only if no rational
> trier of fact could have agreed with the jury.'  *Cavazos v. Smith*, 565 U.S. 1,         ,
> 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (per curiam).  And second, on habeas review,
> 'a federal court may not overturn a state court decision rejecting a sufficiency of the
> evidence challenge simply because the federal court disagrees with the state court.
> The federal court instead may do so only if the state court decision was 'objectively
> unreasonable.' " *Ibid.*

*Coleman v. Johnson*, 566 U.S. 650, 132 S.Ct. 2060, 2062, 182 L.Ed.2d 978 (2012).  Under this

standard, "we cannot rely simply upon our own personal conceptions of what evidentiary showings

would be sufficient to convince us of the petitioner's guilt," nor can "[w]e . . . inquire whether any rational trier of fact would conclude that petitioner . . . is guilty of the offenses with which he is charged." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  Rather, a habeas court must confine its review to determining whether the state court "was unreasonable in its conclusion that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial." *Id*. (emphasis in original) (citing *Knowles*, 129 S.Ct. at 1420).

Upon careful review of the trial transcript, the Court finds Carter's kidnapping conviction is supported by substantial evidence.  At trial, the state presented evidence of Carter's intent to engage in sexual activity, including the victim's testimony that Carter held her against her will in the garage and made unwelcomed sexual advances toward her, and the responding officer's testimony that when he arrived on the scene, "her pants were down to her ankles" and "she was screaming that she was raped." (Doc. No. 10 at 467-68, 581.)

Carter was convicted of kidnapping under Ohio Revised Code 2905.01(A)(4), which states:

> No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person . . . To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will.

Ohio Rev. Code Ann. § 2905.01(A)(4).  Section 2907.01 of the Ohio Revised Code defines "sexual

activity" as either sexual conduct[6] or sexual contact.[7]   The appellate court explained:

> [T]he kidnapping statute "punishes certain removal or restraint done with a certain purpose and the eventual success or failure of the goal is irrelevant." *State v. Taylor,* 8th Dist. Cuyahoga No. 100315, 2014 Ohio 3134, ¶ 30; *see also State v. Matthieu*, 3d Dist. Mercer Nos. 10 02 04 and 10 02 05, 2003 Ohio 3430, ¶ 17; *State v. Moore*, 8th Dist. Cuyahoga No. 60334, 1992 Ohio App. LEXIS 2534, 8, 1992 WL 104220 (May 14, 1992). Thus, the jury's finding of not guilty on the rape and attempted rape charges was "not in any sense a finding that there was no intent or purpose to commit" kidnapping. *Taylor* at *id*.; *see also Matthieu* at *id*. and *Moore* at *id*.

(Doc. No. 8-1, Ex. 12.)

As the state appellate court explained, the statute governing the offense of kidnapping by removing or restraining the victim with the purpose of engaging in sexual activity does not require that sexual activity actually take place.  *State v. Davis*, 880 N.E.2d 31, 65 (Ohio 2008).  Further, the charges of rape and attempted rape, of which Carter was acquitted, involve sexual conduct, while the charge of kidnapping requires "sexual activity," which can be satisfied with either sexual conduct or sexual contact.

Accordingly, and for all the reasons set forth above, it is recommended that the Court find the Carter's first ground for relief lacks merit, and should be DENIED.

---

[6] "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.  Ohio Rev. Code Ann. § 2907.01(A).

[7] "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.  Ohio Rev. Code Ann. § 2907.01(B)

2.      **Ground Two - Ineffective Assistance of Counsel**

The second ground for relief raise in Carter's Petition in ineffective assistance of counsel.

Carter alleges that the trial counsel:

1.      "failed to raise the issue of Miranda warning before trial court;"

2.      "failed to seek instruction at the trial level which caused a waiver of all errors except plain errors;"

3.      failed to object to a "speculation made by [a] forensic scientist;"

4.      "failed to make known the excluded evidence to the court after a side bar was had;" and

5.      "failed to use impeachment evidence namely Officer Moze body cam."

(Doc. No. 1 at 7.)  As discussed *supra,* the first, second and fourth issues that Carter raised regarding his trial counsel's performance are procedurally barred.  However, two issues were preserved through direct appeal: his counsel's failure to object to a "speculation made by [a] forensic scientist"and failure to "use impeachment evidence namely Officer Moze body cam." (*Id.*)

a.      **Failure to object to speculation**

Carter asserts that his trial counsel was ineffective when he failed to object to a "speculation made by [a] forensic scientist" regarding the nature of the contact which left Carter's DNA on the victim's neck.  (Doc. No. 1 at 7.)  Carter raised this claims on direct appeal to both the state appellate court and the Supreme Court of Ohio.  (Doc. No. 8-1, Ex. 10, 16.)  The state appellate court rejected Carter's claim regarding the expert witness testimony as follows:

3. Failure to Object to Testimony

{¶ 57} Carter also complains that his counsel was ineffective for not objecting to the testimony (1) of the nature of the contact that produced the touch DNA on the

26

victim's neck; (2) the detective's opinion of Carter's account of the events; and (3) the police officer's testimony regarding the barmaid's statement.

{¶ 58} In regard to the touch DNA testimony, as already discussed, the testimony was relevant to the state's claim that Carter choked the victim and it met the requirements of Evid.R. 702; the lack of objection, therefore, was not ineffective assistance of counsel.

{¶ 59} In regard to the detective's opinion testimony, the first instance, in which he testified that Carter's reason for why he was at the victim's residence did not "seem like a good idea, especially at four in the morning," was objected to by counsel. The second instance, when the detective testified that he found Carter's story "strange" was improper opinion testimony on Carter's credibility, as we discussed above. But, despite counsel's lack of objection, as soon as the court determined that it was, in fact, improper opinion testimony, it admonished Detective DeCaro that his testimony was improper. As such, Carter's ineffective assistance of counsel claim on this ground fails, because the court on its own found the testimony improper and halted it.

{¶ 60} And, regarding the barmaid's testimony, as we previously mentioned, defense counsel did initially object to the testimony, and the trial court overruled the objection. But, again, once the court realized that the testimony was improper, it quickly reversed itself.

(Doc. No. 8-1, Ex. 12.)

Carter asserts that his trial counsel should have objected to the testimony of the prosecution's forensic expert because it was improperly speculative.[8]  The forensic expert had tested the neck

---

[8]  Ohio Rule of Evidence 702 states that a witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

swabs taken from the victim, and she testified that:

> Q:     [S]eeing these kinds of DNA results, is this more consistent with
> strangulation or with a brush, someone just happening to touch the neck area?
>
> A:     It is variable how much DNA gets left behind.  If somebody, for example,
> were to just brush up against or lightly touch something, I wouldn't expect
> a significant amount of DNA to be transferred.  However, with that being
> said, different people leave behind different amounts of DNA.  It's possible.
>
> For as much DNA as I detected, it seems a little unlikely that it would just be
> from casual rubbing up against, but, again, I can't say for certain one way or
> the other.

(Doc. No. 10 at 734.)  Carter argues that this testimony was impermissibly speculative, and his

counsel's failure to object was constituted ineffective assistance of counsel.  (Doc. No. 1 at 7.)

In reviewing all of Carter's issues relating to ineffective assistance of counsel, the state

appellate court explicitly applied the standards set forth in the *Strickland* decision:

> {¶ 51} Reversal of a conviction for ineffective assistance of counsel requires a
> defendant to show that (1) counsel's performance was deficient, and (2) the deficient
> performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687,
> 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Defense counsel's performance must fall
> below an objective standard of reasonableness to be deficient in terms of ineffective
> assistance of counsel. *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373
> (1989). Moreover, the defendant must show that there exists a reasonable probability
> that, were it not for counsel's errors, the results of the proceeding would have been
> different. State v. White, 82 Ohio St.3d 16, 23, 693 N.E.2d 772 (1998).
>
> {¶ 52} In evaluating a claim of ineffective assistance of counsel, a court must give
> great deference to counsel's performance. *Strickland* at 689. "A reviewing court will
> strongly presume that counsel rendered adequate assistance and made all significant

---

> (1) The theory upon which the procedure, test, or experiment is based is
> objectively verifiable or is validly derived from widely accepted knowledge,
> facts, or principles;
> (2) The design of the procedure, test, or experiment reliably implements the
> theory;
> (3) The particular procedure, test, or experiment was conducted in a way that
> will yield an accurate result.

decisions in the exercise of reasonable professional judgment." *State v. Pawlak*, 8th Dist. Cuyahoga No. 99555, 2014 Ohio 2175, ¶ 69.

(Doc. No. 8-1, Ex. 12.)

In assessing claims of ineffective assistance of counsel, courts apply the familiar standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1998), which requires a petitioner to demonstrate both that his counsel's performance was deficient, and that the allegedly ineffective assistance caused him prejudice:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687. This standard applies "regardless of whether a[p]etitioner is claiming ineffective assistance of trial counsel or ineffective assistance of appellate counsel." *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005).

Where, as here, a state court correctly identifies *Strickland* as the standard for assessing a petitioner's ineffective assistance claim, in order for the petitioner to receive habeas relief, the state court's ruling must be an unreasonable application of the *Strickland* standard. *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009) ("The question is not whether a federal court believes the state court's determination under *Strickland* was incorrect but whether that determination was unreasonable    a substantially higher threshold.") (internal quotation marks omitted). When reviewing a state court's ruling on an ineffective assistance of counsel claim,

29

federal habeas courts must employ "a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15, 134 S.Ct. 10, 13, 187 L.Ed.2d 348 (2013); *see also Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011) ("Our review of the [state court's] decision is thus doubly deferential. We take a highly deferential look at counsel's performance through the deferential lens of § 2254(d).") (internal citations and quotation marks omitted).

Here, the state appellate court concluded the testimony regarding DNA evidence was relevant and admissible under Ohio Rule of Evidence 702. This conclusion is supported by well-settled law in this area. The Supreme Court of Ohio "held that expert witnesses in criminal cases can testify in terms of possibility rather than in terms of a reasonable scientific certainty or probability." *State v. Thompson*, 23 N.E.3d 1096, 1130 (Ohio 2014) (citations omitted). As that court explained, " In the criminal context, questions about certainty go not to admissibility but to sufficiency of the evidence; they are matters of weight for the jury." *Id*. Given the Supreme Court of Ohio's precedent in this area, Carter's assertion that the forensic expert's testimony was impermissible cannot meet the AEDPA standard that it was an error "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786-87, 178 L.Ed.2d 624 (2011). Moreover, assuming *arguendo* counsel's decision not to object to the forensic expert's testimony rose to the level of deficient performance, Carter has failed to show a reasonable probability that, but for counsel's error, the outcome of trial would have been different. The forensic expert witness's testimony was admissible, so an objection would not have excluded it. Accordingly, it is

recommended the Court find the third issue raised in Carter's second ground for relief lacks merit, and should be DENIED.

>    **b.**    **Failure to use impeachment evidence**

Next, Carter argues that his trial counsel's failure to use video captured by the body camera of the responding police officer, Officer Moze, to impeach a prosecution witness constituted ineffective assistance of counsel. (Doc. No. 1 at 7.)  The witness lived in the same apartment complex as the victim, and on the night of the events in question he heard her scream for someone to call 911, saw her with Carter, and called 911 twice to summon the police.  (Doc. No. 10 at 535-547.) At trial, the prosecutor and the witness had the following exchange about the victim:

>    Q:    Have you ever had to call 911 on her?

>    A:    Never.

(Doc. No. 10 at 547.)  Carter's trial counsel followed up on this testimony in cross-examination by asking:

>    Q:    Do you recall telling the police that this was not the first time you had to call 911 for [the victim's] partying?

>    A:    No.  I don't remember telling them that.

(*Id.* at 973-74.)

In his opening statement, Carter's trial counsel told the jury that they would have the opportunity to view footage from Officer Moze's body camera, and they would see "some telling things," including that the neighbor told the officer "This isn't the first time I had to call 911 on her, as a result of something."  (*Id.* at 323.)  At the close of the trial, Carter's trial counsel informed the court that:

There was an objection I made that I just wanted to briefly put on the record. . . . with respect to the [body camera footage of the neighbor witness'] statement being played, you know, prior to trial . . . I felt like [the prosecutor and I] came up with an agreement that we were going to play this thing. . . . I think I also referenced it to some extent in the opening statements.  So I was under the impression that I didn't need to impeach him with it because it could still be brought in intrinsically for impeachment when [the officer testified]. . . . I don't want to say I was intentionally misled, but I was told one thing and something else happened.

(*Id.* at 832-33.)  The prosecutor had a different recollection of their agreement:

I thought I made clear that we had an issue playing [the neighbor witness's] part ... because [the neighbor witness] would testify, and he would be able to be cross-examined on prior statements in that video, and that playing that video through [the officer] would clearly be hearsay of a witness . . . . I specifically remember telling [trial counsel] that we would not play . . . [the neighbor witness's] portion . . . .So I apologize to [trial counsel] if he thinks the conversation went differently.  I know he's not trying to mislead the Court, neither am I, so it might have been just a miscommunication.

(*Id.* at 833-34.)

The state appellate court rejected this claim as follows:

4. Failure to Use Impeachment Evidence

{¶ 61} Carter further contends that his trial attorney was ineffective because he failed to use impeachment evidence. Specifically, Officer Moze's encounter with Carter at the scene was captured on the officer's body camera. During opening statement, Carter's counsel told the jury that they would have the opportunity to see the video from the camera, which captured the police's interactions with Carter, the victim, and the neighbor who called the police. The portion of the video relative to the neighbor was not played, and Carter contends that it contained impeachment evidence on it, and that counsel was ineffective for not using it. At trial, the neighbor testified that he had not made any reports to the police concerning G.R. prior to this incident. The alleged impeachment evidence was the neighbor allegedly telling the police that he had to call the police on the victim before.

{¶ 62} Carter now contends on appeal that "[a]fter the State had rested, [his] trial counsel indicated a desire to play Officer Moze's body cam video to impeach [the neighbor]." Carter contends that counsel was ineffective because he did not impeach the neighbor during cross-examination of the neighbor. The record indicates that this

situation occurred because of a misunderstanding, and after our review, we find that it did not constitute the ineffective assistance of counsel.

{¶ 63} Specifically, defense counsel indicated that he believed he and the assistant prosecuting attorney agreed that the video from the officer's body camera, including the portion showing the police's interaction with the neighbor would be played by the state during Officer Moze's testimony, who testified after the neighbor testified. Thus, defense counsel believed the impeachment evidence would "be brought in intrinsically" through the officer's testimony. The state did not play that portion of the video, however, when it questioned Officer Moze, and defense counsel stated that, although he did not believe he was intentionally misled, he was "told one thing and something else happened."

{¶ 64} The assistant prosecuting attorney stated that he "thought [he] made it clear that [the state] had an issue playing [the neighbor's] part * * * because [the neighbor] would testify * * * and playing that video through Officer Moze would clearly be hearsay of a witness." The assistant prosecuting attorney stated that he had not been trying to mislead defense counsel or the court, and that he believed defense counsel was not trying to mislead the court either, and the whole incident must have been a "miscommunication."

{¶ 65} On this record, counsel was not ineffective, and furthermore, the outcome of the trial would not have been different if the neighbor had been impeached on his testimony that he had not previously called the police regarding the victim.

(Doc. No. 8-1, Ex. 12.)

When raising his objection to the omission of the video evidence, trial counsel acknowledged it is "not that it's the biggest thing in the world whether or not [the neighbor witness] admits to saying he called 911 on her before or not." (Doc. No. 10 at 833.)  This evidence would potentially have impeached a witness whose primary role testimony at trial involved undisputed facts: he heard the victim yell for someone to call 911, and twice called 911 to summon the police.  (Doc. No. 10 at 543-46.)  The audio recording of both 911 calls was entered into evidence.  (Doc. No. 10 at 543, 546.)  Again, applying the doubly deferential standard of *Strickland*, this Court must defer to the state appellate court's reasonable determinations that this miscommunication does not rise to the level of

conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" as guaranteed by the Sixth Amendment to the United States Constitution, and that the outcome of the trial would not have changed if the neighbor had been impeached on his testimony that he had not previously called 911 regarding the victim. The inadvertently excluded body cam footage potentially impeached a witness on an issue that was not core element of any of the charged offenses, and that witness's most relevant testimony was undisputed. Accordingly, it is recommended the Court find the fifth issue raised in Carter's second ground for relief lacks merit, and should be DENIED.

### V. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DISMISSED IN PART and DENIED IN PART.


Date:   March 16, 2020                          __s/ Jonathan Greenberg_____
                                                             Jonathan D. Greenberg
                                                             United States Magistrate Judge


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**